Good morning, Your Honors. May it please the Court, Stephanie Parent with the State of Oregon. I'll be presenting argument on behalf of all petitioners, but to the extent the Court has specific questions for any of them, I'm in good company with counsel present for each. For the State of Washington, Joan Marchioro, for the Columbia Riverkeeper and other petitioners, Tom Buchel, and for the Nez Perce Tribe, Michael Lopez. I am going to try to reserve three minutes of my time for rebuttal. Can you start by addressing why this case isn't moot or not ripe? But it sounds more like it's moot. I agree, Your Honor. It's either not ripe or not moot seems to be the question. In fact, this case is ripe for review and is not presently moot. And the reasons are this. The Bradwood bankruptcy did interrupt the process somehow, somewhat, but there is still certainty as to several issues. Number one, it is certain that the Federal Energy Regulatory Commission's order is still effective. If, in fact, this project is not going to proceed, FERC needs to withdraw or rescind its order. So, there's two orders. There's the CPCN and the Section 3. And as I read the regulations, well, the project proponents are liquidating, or they are liquidated. The Section 7, the CPCN, isn't even transferable under the FERC's regulations. So, what real issue is there that would go forward with the permits that were issued? Your Honor, I read those regulations as well and found it very curious because FERC approved this project as a whole. The pipeline, the liquefied natural gas terminal can't go forward without the send-out pipeline. So, either these projects are transferable as a whole or they're not. But the projects that are transferable, FERC's order is still effective. And if they're not transferable, then FERC needs to withdraw this order because this order is still in place and it's still causing injury, specifically to Petitioner Kaiser, whose private property this pipeline will cross. Well, of course, if no project proponent is going to go forward or is capable of going forward, if it's not transferable, to try and reinvigorate or to remake its certificates to the states, I'm having trouble seeing why anything we would say about the CPCN wouldn't be merely advisory. I think because of the way FERC authorized this project and because it's connected, there's an open question of whether it's transferable or not. And in any case, it's clear that the permit or the order has been transferred at least to BL Credit Holdings, as we explained in our recent letter from Columbia River. Has it been transferred or did they just purchase all the assets? I'm sorry, you're correct. They purchased the assets. So it is being held by natural gas companies if you follow it up the corporate chain, Northwest Natural Gas and TransCanada Gas is holding onto this order now. So the next step in the process is whether it's transferable. It seems that because it's been approved as a project, a whole project, albeit under separate sections, it seems that it would be transferable. If it's not, then I repeat, FERC needs to rescind its order. Is there any application to transfer pending? Not that I'm aware of, Your Honor. I think that the auction just occurred. Can FERC initiate its own some proceeding to withdraw the permit or to revoke the permit under these circumstances? I don't know in fact, but it is my best guess that yes, indeed, FERC can. It is FERC's order. It seems that it would have the discretion to withdraw or rescind its order based on these circumstances. The state of Washington and the state of Oregon also denied some permits that were required before the construction could begin, correct? Yes, Your Honor. The state of Washington under 401 Clean Water Act and Oregon under the CZMA, the Coastal Zone Management Act. But what happened there is the states were asking for more information in order to make those determinations. And when Bradwood went bankrupt, the information flow was cut off. And there's a time frame in which the states have to make those decisions otherwise they're deemed waived or concurrences assumed. So in those cases, the states didn't have a choice but to deny at that time. Anyone who holds this permit, if it can go forward, can resubmit those to the states. And of course, provided that they're going to submit the information that the states are looking for to make these determinations. So while they've made those decisions, it's not an ultimate cutoff that can be resubmitted. Was it appropriate to grant the permits on condition that they get these additional approvals? No, Your Honor. It was absolutely not appropriate. The Clean Water Act, the Coastal Zone Management Act, and the Endangered Species Act are all very plain and unambiguous in their language. The Clean Water Act and Coastal Zone language would say, no federal license or permit shall be issued until the states have made their determinations. And likewise, under the Endangered Species Act, the federal agency FERC here cannot authorize the project until it has consulted with the federal fisheries agencies. FERC did not do that here. And it's frustrating the intent of Congress and the plain meaning in those statutes. Moreover, Congress reiterated in 2005 when it amended the Natural Gas Act that the rights of the states were expressly preserved under those provisions of the Clean Water Act and the CZMA. Here, what FERC is doing is trying to rewrite the law. It relies upon its general authority under the Natural Gas Act to condition its orders. But it can't use that general authority to override the plain and specific requirements of three other federal statutes. So it's clear that placing those conditions that require later compliance with the Clean Water Act, the Coastal Zone Management Act, and the Endangered Species Act is in violation of those laws. Let me ask you, if we were to conclude that the case is moot, what happens to your lawsuit? Or what happens? Are you ever able to get to the merits? No, Your Honor. In a subsequent lawsuit? In other words, what would be the effect of a mootness determination by us? Well, Your Honor, I would like to state that part of FERC's argument for why it's okay to condition these permits on later compliance with the Clean Water Act and Coastal Zone Management Act is they say that they do this all the time. It's their practice to do this, and they cite to their own order, another one of their own orders, to say we do this all the time. So to the extent we get to a mootness question, it seems that FERC has a So you're saying the issue would arise again. Let me ask you about the City of Fall River. Then maybe after you finish with Judge Piazza's question you could address their technique, which was to say your statute of limitations doesn't even start running until those states have approved. So is that the answer? No, Your Honor. We have said in briefing that we believe Fall River was wrongly decided in that regard because the Natural Gas Act does not require any and exclusive judicial review provisions for seeking review of FERC's orders. So under the Natural Gas Act, petitioners had only 60 days to go back to FERC and seek rehearing of its final order. And then when FERC denied rehearing, we had 30 days to come to this Court and seek judicial review. The D.C. Circuit and Tennessee Natural Gas Pipeline v. FERC has held that those provisions are jurisdictional and that the courts and FERC do not have the authority to extend those time frames. And so if this Court were to dismiss we've lost our opportunity. If dismissed on ripeness grounds, we've lost our opportunity because of the NGA provisions say you have to challenge the order during those time frames. So if you're looking at it in the context of a ripeness, which we would argue that this case is definitely ripe, but if you're inclined to look at it in the context of ripeness, dismissal is inappropriate because it would preclude review under those jurisdictional judicial review provisions of the Natural Gas Act. And that would be the same, in your view, that would be the same for mootness as well? Yes, Your Honor. I don't see, unless FERC begins the process over and issues a new order, we would be precluded from our claims being heard. Well, if it's not transferable, wouldn't they have to do that? If you're saying that the two, the Section 3 and the Section 7 are going to travel together, and if the Section 7 is not transferable, then somebody, a new project proponent would have to come up and start over again, and that would start the time frames running again. I think it's confusing, Your Honor, and I'll repeat that it either is transferable or it isn't. I mean, do we go forward on our Section 3 claims against the terminal, but not the pipeline? And I think that FERC could provide that certainty here by either rescinding its order and making it certain for all that this project is not going forward, or in the likely event that it is transferable, our claims need to be heard here. If we were to find mootness, could we nonetheless still vacate FERC's order? I mean, sometimes in civil litigation when a matter becomes moot, we vacate the underlying decision. I think that you could vacate by ordering FERC to withdraw or rescind its order to create that certainty, Your Honor. Okay. Any other questions about the justice abilities, Your Honor? Yeah, the standing issue, but did you want to address standing before we get to the merits? Well, I think it's clear that the petitioners have standing here. I can address that further if you'd like. Why don't you get to the merits? I think in response to the merits with respect to the Clean Water Act, the Coastal Zone Management Act, and the Endangered Species Act, I just want to add one other point. Although it's not an ESA case, this Court's decision last week in California Coalition B, California Wilderness Coalition, held very clearly that the word consult, its ordinary meaning involves conferring before taking action. That was based on a specific statute, though. That's not present here. Yes, Your Honor. I'm familiar with that case. Yes, Your Honor, but the ESA has the exact same language that the federal agency cannot authorize a project until it has done so in consultation with the federal fisheries agencies. And what section is that? I'm sorry? What statute were you looking at for that? The Endangered Species Act, it's Section 7. Because I thought it was a little bit vaguer than it was with the Clean Water Act and the Coastal Zone Management Act. It does not have the same, you're right. It lacks the until language. Yes, which is why I'm referring you to the California Wilderness Coalition. It's clear that if you do, that in consultation means you cannot have made your decision already. Well, it just says in consultation with the secretary ensure that any action is not likely to jeopardize the existence or habitat of endangered threatened species. So it doesn't say you have to do that before. Does it make a difference if the Endangered Species Act doesn't have the same temporal statement that the Clean Water Act and the Coastal Zone Management Act do? It may, Your Honor. We clearly prevail on the Clean Water Act and Coastal Zone Management Act claims. But with respect to the Marine Fisheries Service set in the record at 541, once the agency has made its decision, it has little incentive to double back and revisit the actions through the ESA consultation process. So it becomes a hoop to jump through rather than a meaningful decision making process where the consultation can inform the decision rather than coming in afterwards. So you're saying as a practical matter that it's preferable to have the consultation in advance? And likening it to the holding in the California Wilderness Coalition where the court there held that to consult means before a decision is made. FERC has also violated the National Environmental Policy Act. The two-fold purposes of NEPA are well established in this court. The environmental impact statement is to inform the decision maker and is to allow the public to participate in the decision making process. This needs to happen before FERC makes its decision authorizing this project. FERC has failed here. There are numerous adverse effects that FERC did not analyze or disclose in its final environmental impact statement. Many of these effects were deferred until later or will not be analyzed at all in any sort of NEPA process. They're all post-decisional. And some of these effects will never be evaluated. I'm going to focus on the species, including salmon, that are protected under the Endangered Species Act and which are of significant interest and importance to all the petitioners. In fact, the states and tribes and others have been working for years to restore these species in the Columbia River. One of the effects of these species involves the fact that the project will require a 50-acre turning basin in the Columbia River estuary. That turning basin is located, according to the Clifton Channel. I want to be clear that this is a natural channel formed by Channel Islands, and it has some of the rarest, best, tidal habitat for aquatic species. The species need to rear in this shallow habitat in the Clifton Channel. The 50-acre turning basin will have to be created by dredging 700,000 cubic yards of material out of the Columbia River. The National Marine Fisheries Service and the Oregon Department of Environmental Quality have grave concerns about this enormous turning basin project. The DEQ comments are in the record at 1577 to 1579. DEQ in particular is really concerned that the dredging of this much material will create a change in the morphology of the river. It's also located very close to the navigational channel in the Columbia, which was also recently dredged. DEQ's concerns have to do with how that change in morphology is going to result in sediment being deposited in the Clifton Channel, which will have adverse effects on that rearing habitat, and of course on the species that rely upon it. They say dredging activities were subject to extensive modeling, which indicated that dredging would not result in significant changes to the overall bed conditions in the Clifton Channel. Is this basically just a disagreement between experts? No, Your Honor. If you look in the record at 1031, the FERC admitted that the model it used, which was a two-dimensional model, does not address the long-term sediment deposition. So that's clearly stated in the final EIS. So they say dredging would not be conducted during periods of sensitive fish activity. That's just the dredging itself. What we're talking about here is that that dredging is going to create an enormous deep basin, changing the shape of the flow of the river over that changed shape that is going to create continual sediment and deposition in the Clifton Channel. And it's that long-term deposition of sediment that the model does not address and that FERC admits in the record it does not address. And so I think, if my notes are correct, that they're also saying that if the services review determines that the impact from dredging are unacceptably high and can't be mitigated, then the project wouldn't go forward. And there I want to point out that what they're talking about is under the Endangered Species Act, there are a number of species that use this Clifton Channel that will not be addressed through the ESA process. So to make that clear up front, the only time that the ESA allows the fisheries agencies to stop a project is if they determine that the project will cause jeopardy to the species. Jeopardy to the species means that that project is going to tip that into likely extinction. So is the fisheries agencies over this going to determine that there's jeopardy and stop the project or come up with reasonable and prudent alternatives? That's not known. But what the states would like to see and what the other petitioners would like to see is that the adverse effects, which don't necessarily amount to jeopardy, are also addressed. But NEPA doesn't require mitigation. NEPA just requires them to take a hard look. And it sounds like, at least their presentation is, we've taken a hard look and here's what our thoughts are about how to deal with it. They're not required to mitigate to any level under NEPA. They are required to look at the mitigation to determine whether or not it's effective. And this Court's decision clearly stated that in South Fork Band Council of Western Shoshone v. Department of Interior, that an essential component of a NEPA analysis is whether mitigation is effective. And FERC has deferred any real analysis of mitigation until after it's already authorized the project. But under NEPA, I would respectfully disagree that FERC has done sufficient analysis here and considered it because it only did the look at the one-time dredging and didn't look at the sediment deposition over time. And finally, when you get to the Clean Water Act and Coastal Zone Management Act issues, there the states also have the opportunity to condition their approvals on certain changes or reconfiguration in that turning basin. But because FERC has already approved it, that's not going to happen here. Go ahead, finish your question. If we agree with you on the Natural Gas Act, the Coastal Zone Management Act, or the Clean Water Act, do we even need to get to NEPA? Your Honor, I think it would be important to get to NEPA. That's not my question. My question wasn't whether it would be important to get to NEPA. No, Your Honor, you don't, because the order will have to be set aside on those grounds. I do want to answer, Judge Okuda, you said we have final approval on the project. FERC has mischaracterized this as a veto power, or we have the opportunity to excuse me, they characterize it as a veto power. It's actually more nuanced than that. We can't veto the project because they haven't complied with NEPA. It has to be related to the Clean Water Act or the Coastal Zone Management Act. The State's interests here also involve trying to condition the project so that it could go forward in compliance with the State's water quality standards and the Coastal Zone. But as to that, you do, the applicant can't go forward with the project without the State's concurrence or certification. Right, but the harm that FERC has created here is they've authorized the project including certain design features like the turning basin, which informed what size the tankers could be coming up, which also informed what the adverse effects are. So it just simply doesn't make sense, in addition to impinging upon the State's rights that Congress preserved. Your time is up. I'm sorry. Thank you. Thank you. Good morning, Your Honors. I'm Robert Kennedy on behalf of the Federal Energy Regulatory Commission. I agree with some of the comments earlier that at this point petitioners are seeking what is, in effect, an advisory opinion regarding the Commission's conditional approval of the Bradwood project. They're challenging orders that did not permit construction. They're challenging orders that  conditioned any authority to begin construction upon their own sign-offs under the relevant Federal statutes. Could you advise me, is the permit, the CPCN and the Section 3 permit, are they transferable? I've noted the conflict as well and have discussed this, and I've been advised that there would have to be, to the extent this project goes forward in any way, shape, or form, there would have to be further orders from the Commission authorizing that in some fashion. And so would those be transferable? Because the concern is, if these permits have been issued, and let's assume for the moment that we think that FERC did issue permits, if the permits have been issued and they've got this time frame, their concern is, as time passes, they won't have another opportunity to challenge it. Now, if it's not transferable, the project proponent is liquidated, the states have disapproved, it doesn't sound to me like there's anything left. But if there is something left, which is what the state is saying, then that could be transferred or assigned to another party who could then run with it and remake applications, their concern is they won't have the ability to challenge it. And so I want to understand whether that's a possibility or not. I don't believe it would be. I believe they would have every opportunity to challenge whatever orders the Commission may issue in the future. So what would the procedure be? Well, I think to the extent, first of all, particularly with respect to the pipeline, I think that's the clearest point. If you look at Section 7 of the NGA, it talks about an analysis of the applicant's ability to comply with the regulations, with the purposes of the statute. So that's an individualized assessment. So I think the process would be, to the extent there is a project sponsor out there who wants to pick up the mantle and try and move forward with this process, they would have to come before the Commission, apply for, put before the Commission whatever aspect of the project they're looking to take forward, apply again, essentially. So it would be a new application for CPCM? I mean, even if they attach the old application or the old certificate, would it be a new application for purposes of FERC's procedures? I think it would be. I think it would be a new docket that would look at that application. And I mean, at this point, I would note that this is incredibly speculative that this is ever going to happen, because the trustee was not able to find anyone, as I understand it, to take on these licenses, to purchase them out of the estate. They abandoned them as worthless to the estate. And subsequent to the bankruptcy, we had the State of Oregon in particular issue its decision under the Coastal Zone Management Act, and Petitioner's Council indicated that it was based on a lack of information from the applicant. And that's true in part, but it also made substantive decisions. It found that we heard about the turning basin that requires all this dredging, that going forward with that dredging and building the terminal where it is sited doesn't comply with the county's land management program, which is incorporated in some fashion into the Coastal Zone Management Program. So there was a substantive decision there. So is it material, you're saying material portions of the project were disapproved substantively by the state, not just based on lack of information? Correct. If you look at their letter, which is subsequent to the submission of the record to this court, it was, the dates noted in our letter, and they said, it's about a 10-page letter. Five of them are going through the background and listing what information is outstanding, and it says, in the alternative, we find that the county's zoning regulations forbid this. At the time that issue was under appeal before the Oregon Court of Appeals, and as we noted in our letter, the Oregon Court of Appeals agreed that the county had violated local zoning laws by approving the project, or I'm not quite sure of the ins and outs of that litigation, but that's the gist. They remanded it back to the county for further consideration. Obviously there's no sponsor now, so I assume there's no consideration going on. Could I go back to the permit that FERC did issue with two questions. One is, apparently it was picked up by a creditor who is indirectly owned by Palomar, so a natural gas company who potentially could have an interest in this project, and does that make a difference? And the second question would be, why doesn't FERC just vacate the order if, in fact, there's no project proponent at this point? As to question one, I don't think it makes a difference at this point because we're speculating as to what will happen, whether Palomar or whatever affiliated entity that is will want to take on the entire project, which seems unlikely. Maybe they just want to take on the mantle and amend their application to include the pipeline portion of the Bradwood project. We don't know at this point, so I don't think other than that the law and the regulations are clearer with respect to the transferability of the pipeline pieces of the certificate, that I don't think it makes any difference at this point. So Palomar would have to, but according to what you previously said... They do have an application pending. It's one of the issues raised in the NEPA arguments by the parties that is essentially roughly shaped like a U from eastern Oregon up to the western portion, and a piece of it was going to connect to actually the Bradwood project. As I understand it, and I did look through the FERC docket before I came here to see what the status of that is, and as I understand it, there hasn't been much development. They do have an application before the commission. The commission has sent them letters asking basically are they going to go forward with it, should we continue to expend resources on it, and they said they were going to hold, in light of the bankruptcy of Bradwood, they were going to hold an open season to see if there's commercial interest for some portion of it. And that's separate from the Bradwood project. If they wanted to take over the Bradwood project, from what you previously said, they would have to submit a new application? Or amend what they have. For example, if they wanted to take the pipeline piece, they would have to amend their application. I think your second question was why hasn't FERC acted yet? That's answered by 15 U.S.C. 717-RA, which is the jurisdictional judicial review portion of the Natural Gas Act, and it provides that once the record underlying challenge orders are submitted to this court, this court has exclusive jurisdiction to modify or set aside any order from the commission. So the absent leaver of the court. Let me ask you this. If we were to determine the case as moot, could we vacate the order? On mootness grounds? Certainly that's within your discretion to do so. I think first I heard a question before. When considering mootness initially, I would urge the court to look at its decision, which is cited in one of the parties' briefs, the intervenor, Nez Perce, Public Utilities Commission versus California Public Utilities Commission of California versus FERC, which is 100 F. 3rd, 1451, which is a similar circumstance where a party was going to develop a project, expand their facilities. FERC issued a certificate of public convenience and necessity. The state utility commissioners argued that that was in their jurisdiction to be able to do that. While that legal dispute was percolating, the project sponsor had economic difficulties, wasn't going to go forward with the project, and essentially returned the certificate to the commission. The issue before the court was whether it was moot, and found without a project applicant that the matter doesn't present a live case for controversy. We heard some of the, that case addressed some of the similar arguments I heard today, that this is a recurring issue and it's maybe a vague review. I don't think that exception to the mootness doctrine applies here, and in fact, in that case, the court found specifically that FERC orders under Section 7 Certificating Pipeline Projects, that the time frame of development of those projects and their operation makes clear that judicial review can be had in the normal course. And I think that sort of brings us back to the initial question, would they ever get a chance to challenge these orders? I mean, certainly not if no one comes forward to develop this project, and there would be no practical effect from that. And even more, certainly in this PUCV California case, the court noted if the action is moot, it certainly can issue a type of declaratory judgment and rule on purely legal issues put before it. In this case, we have some legal issues, but as we heard, there's a host of factual issues as well. I think the analysis by the First Circuit in the point, there's that case, and it references a decision from the D.C. Circuit, which I think is Baltimore Oil and Gas, which finds that statutory limitations periods can't run against claims that are not ripe. I think if there was a subsequent order, for instance, had this bankruptcy not occurred, our argument is that this case wouldn't be ripe, and they would not have standing until a notice to proceed was issued, and authorizing construction. And at that point, we would argue they would have the ability to bring up all these claims, and at that point, the claims would be ripe, and there would be an imminent injury. I think it's somewhat similar to cases you see, or that we see at the Commission, where in enforcement actions, the Commission will assert jurisdiction over someone, commence an enforcement action, and they argue, no, you're overstepping your bounds, you don't have jurisdiction. They try and get an appellate court ruling on that issue, and raising some of these same arguments. The jurisdictional finding was in this first order, we have 60 days to appeal, and the court said no, you can bring your appeal when the case is over, when there's an actual injury from the Commission's assertion of jurisdiction, and the jurisdictional rulings will merge into that final ruling. I think that same process would occur here. The case I have in mind is a Fifth Circuit decision from 2008 Energy, I believe, or 9 Energy Transfer Partners, and that references a Supreme Court decision, Standard Oil versus FTC, I believe it is, which talks about this merging of earlier rulings. So do they have to go back to FERC to get a notice to proceed? How does that work? If there was a project sponsor, yes, they would. As the Commission made clear here, the authority embodying this order does not permit them to conduct any construction. There's a number of pre-construction activities that they must, pre-construction conditions that they must fulfill before the Commission will authorize them to actually go forward and break ground, and that would be embodied in a notice to proceed, so that would come. They would present evidence to the Commission that maybe they successfully navigated the permitting process. So it's your view that that's when the case is ripe for review? If we had a project sponsor. Assuming everything had moved forward. Yes. In the Commission's view, that's when it's ripe? Yes, yes. At that point there would be, I believe at that point they would be aggrieved under the terms of Section 19 of the National Gas Act, which incorporates injury and facts. At that late point, Counsel, it seems kind of counterproductive to have people in place ready to turn the first shovel before the challenge. It certainly ought to be challengeable at an earlier stage than that. What would that earlier stage be? Well, I don't agree that it's challengeable before that stage, because our view is until that point, there's not a sufficient imminent injury to support standing, and the case is not ripe. And as we saw here, even putting aside the bankruptcy, the issue likely would have gone away or the project would have been substantially modified, given the objection raised by Oregon during the Coastal Zone Management Review process. That's right, there will, at notice to proceed, the company will be gearing up, getting ready to go, but at that point, there would be a sufficient injury to support standing and ripeness, and to the extent the agency or the court believes that the issues are close enough that construction shouldn't go forward until it's resolved, there's certainly procedures in place to impose and stay administratively by the agency or from this court to allow judicial review. If we disagreed with you that the notice to proceed is the point when the statute of limitations would run, if we say no, it's when you issued the permits, let's just assume. The argument they're making is that what the City of Fall River with the court did in that case was improper because it's a jurisdictional requirement that that time frame runs from the moment of decision and you can't by court order extend that. What's your response to that? I don't think the court would be extending the time frame. I think there would be a subsequent order that would start the time frame. In that case, I think there were outstanding concurrences waiting from the Coast Guard and other agencies. When those came in and the agency actually issued an order saying go ahead with the next phase, then that would be the agreement order and that would start the statutory time limits. This is what the DC Circuit found in the Baltimore oil and gas case cited at Fall River that the time limits don't run against claims that aren't right. I think it's that concept. What gives FERC the authority to issue these I think FERC's authority to issue these conditional permits is based in Section 3E and Section 70 of the Natural Gas Act, which plainly permitted to impose conditions when acting on LNG applications and pipelines. In these large infrastructure projects, these LNG projects, it exercises it for two reasons. One, it allows the commission to fulfill its role as congressional intent found in Section 3 and Section 15 of the Natural Gas Act that the commission act as the lead agency and that it act upon these applications expeditiously. It also serves a practical function. As the commission explained in the orders under review here, there's a myriad of permits that a project sponsor needs to get and it may not be possible to get them all lined up while you're ducks in a row in sufficient time to allow the commission to act in a reasonable time frame on matters within its jurisdiction. So the commission acts when it has sufficient information to give A, signals to the project sponsor and more importantly the people loaning them all the money to go forward with this that you're not throwing good money after bad based on we have sufficient information to address the matters within our jurisdiction and we find that it is in the public interest. It also tells the state agencies look at the converse. If the agency believed that a project wasn't in the public interest, wasn't needed, but just held back and waited for all these review processes to go forward, the states would be expending resources needlessly on review processes that turn out to be moot because the commission doesn't believe the project's in the public interest so it moves. As practical as that sounds, what do we do about the language in the Clean Water Act and the Coastal Zone Management Act that says you can't issue your permit until these steps have been taken? Those statutes the commission's issuance of conditional approvals I believe complies with both the language and the intent of these statutes. I think it's important to look at the actual language of these statutes. It's not any old permit or license. It's specific ones and section 307 of the, it's permits that authorize an activity that implicates the concerns of these acts and section 307 A3A speaks of a required federal license or permit to conduct an activity affecting any land or water use, land or natural resource of a coastal zone. And we look at the regulations promulgated by NOAA which administers the act and they say federal, and we cite this as their comments on the regulations, they say federal license or permit as used in the act, there's a four part test and one of those that actually authorizes an activity and then authorizes an activity that has a reasonably foreseeable effect on the coastal zone. So when I looked at the CPCN or the order it didn't say provided you do such and such then we will issue you this permit to proceed. It said here's your permit to proceed and you should comply with these subsequent conditions. So it was hard for me to see how a permit with conditions as opposed to a conditional permit met those requirements. I mean it was drafted as here's your permit and authorization and then here are the conditions. Well first of all I think you need to read the two orders together. I mean the initial order and the commission's rehearing order are its issuance of its decision and its explanation of that decision. And I think they both made clear that there would be no that the orders do not grant any authority to begin construction until the review processes under the relevant federal statutes are successfully completed. I mean in particular if you look at paragraph 28 and 29 of the rehearing order, the commission says explicitly, this is paragraph 29 which is that excerpt of Record 107, because construction cannot commence before all necessary authorizations are obtained, there can be no impact on the environment until the federal laws are complied with. So I believe the commission conditionally authorized the project on subsequent fulfillment of the various pre-construction conditions that it imposed. We talked about the Coastal Zone Management Act. I think the Clean Water Act the language of that act is equally clear. Section 401A.1 speaks of an applicant for a federal license or permit to conduct any activity which may result in any discharge in the navigable waters. Did you have a, I didn't find a condition for the Clean Water Act in the permit. Well it's a condition first as a matter of law, given section 401. It was not mentioned, they're absolutely right. It is not an express condition in the initial order but the commission cleared that up on rehearing and if you look at paragraph 28 and 29 there again it noted that relevant authorizations under the CWA, Clean Water Act, CZMA, etc. would have to be obtained. I mean that is, it was an omission but that's why you have rehearings so you can deal with those. With respect to the Environmental Species Act, very quickly there's two timing provisions in there. Section 7C, you noted the ambiguity about there's no express, no license or permit shall be issued. And that's right. There's two timing provisions. Section 7C which talks about the issuance by the agency of a biological assessment and it says it shall not allow any construction to occur before that happens. And there's no allegation here that the commission permitted construction to go forward before the issuance of a biological assessment. Section 7D talks about the, during, addresses the time frame during consultations and it says that the agency shall not make any irrevocable commitment that cuts off the consideration of reasonable alternatives. And the commission made absolutely clear that it's order and it's conditional, it's granting of conditional authority was designed to ensure that whatever may come out of this endangered species review process, whether it be modifications of the project or whether it be a determination that the project can't go forward, we're going to preserve the environmental status quo so we can consider all that and make sure that we don't move imprudently and cause harm to the environment before everything is nailed down. I assume my time has expired. Thank you. Thank you. Grounders, if I may, you're correct. There is no condition with respect to the Clean Water Act in the final order. Council for FERC is asking that you read the rehearing order together with the final order authorizing the project. However, the rehearing order doesn't modify that final order in any respect. It doesn't create an additional condition. The same thing is true of this idea of a notice to proceed. That turns up first in the rehearing order, which only denies the petition for rehearing. And what FERC is essentially doing is changing the terms and conditions of its order without actually modifying its order to do so. And in this case, creating that new step that was nowhere in its final order or any conditions. Why couldn't you read the two together? The rehearing order simply denies the petition. It provides some explanation. In particular, paragraph 29, which Council is relying upon to say that it created this Clean Water Act condition simply disagrees with petitioners. It doesn't actually create a condition that either the applicant or any of the petitioners can rely upon. The notice to proceed is a new invention from the rehearing order created to evade judicial review. What the rehearing order actually says is this constitutes final action by the Commission and parties who are aggrieved may seek judicial review. We had to do it at this point in order to satisfy the Natural Gas Act. Moreover, it simply makes sense to wait until, as Judge Fletcher said, the shovels are ready to turn the dirt, means that the harm to the petitioners will be ongoing while we're trying to undo FERC's orders. And I want to make as my last point, Council in the beginning of this argument talked a lot about all different things that might happen. There's certainly no certainty there, and in fact at one point he said there will be a whole new application process. But if that's the case, this FERC order that is out there needs to be withdrawn. And that's why the PUC of California v. FERC case is unavailing, because in that case the project proponent had returned the permit. This permit has not been relinquished. It was a real asset that no one took because BL Credit had so much money into it. And so they've picked it up now. It's out there. The project is potentially viable. And these claims, which are primarily legal, and the Natural Gas Act and NEPA claims, which FERC has no intention of revisiting, are ripe for review. Thank you. We appreciate your arguments. Matters submitted and we'll conclude our session for today. Thank you.
judges: Fletcher B. , Paez, Ikuta